IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

TAKEDA PHARMACEUTICALS USA,
INC.,

                    Plaintiff,

          v.

SPIRIDON SPIREAS,

                    Defendant.

CIVIL ACTION
NO. 17-0452

# OPINION

**Slomsky, J.**                                    **October 3, 2017**

## TABLE OF CONTENTS

I.   INTRODUCTION ................................................................................................... 3

II.  BACKGROUND .................................................................................................... 4

     A.  Mutual and United Entered into a Contract with Hygrosol, Spireas,
         and Bolton to License the Patented Liquisolid Technology ............................................ 5

     B.  Spires Becomes Vice President of Research and Development at Mutual
         and Develops the Pharmaceutical Drugs Felodipine and Propafenone .......................... 6

     C.  Prior Actions Which Relate to the Patented Liquisolid Technology ............................... 7

         1. St. John's University Sues Spireas, Bolton, and Hygrosol, Disputing the
            Ownership of the Patented Liquisolid Technology ..................................................... 7

         2. Mutual and United then Sue Spireas, Bolton, and Hygrosol
            for Alleged Misrepresentations Involving the Ownership
            of the Patented Liquisolid Technology ...................................................................... 8

         3. Spireas' Tax Court Proceedings ............................................................................... 10

     D.  Procedural History of This Action ............................................................................ 12

III. STANDARD OF REVIEW ...................................................................................... 13

IV.  ANALYSIS ............................................................................................................ 14

     A.  Takeda's Claims Are Not Barred by Claim Preclusion ................................................ 14

1. "The Thing Sued upon or for" Is the Same in This Case
and the Prior State Court Action...............................................................15

2. The Causes of Action Are Not the Same in This Case
and the Prior State Court Action...............................................................16

3. Persons or Parties to the Action Are the Same in This Case
and the Prior State Court Action...............................................................19

B. Takeda's Claims Need Not Be Dismissed for Failure to Join an Indispensable Party,
But Mutual Delaware Must Be Joined in This Litigation .............................................20

1. United Is a Necessary Party......................................................................22

2. Joining United Would Destroy Subject Matter Jurisdiction......................................23

3. Since United No Longer Exists, Its Successor-in-Interest
Mutual Delaware Must Be Joined ...............................................................24

C. All Claims Except for Takeda's Breach of Contract Claim in Count II
Are Not Barred by the Statute of Limitations...................................................25

D. All Claims Except for Takeda's Breach of Contract Claim in Count II
and Money Had and Received Claim in Count VI Are Barred by
the Gist of the Action Doctrine ...............................................................27

1. Takeda's Fraud/Misrepresentation Claim Is Barred by
the Gist of the Action Doctrine...............................................................29

2. Takeda's Breach of the Duty of Loyalty and Breach of Fiduciary Duty Claims
Are Barred by the Gist of the Action Doctrine...........................................30

i. Takeda's Breach of the Duty of Loyalty Claim Is Barred by
the Gist of the Action Doctrine...............................................................31

ii. Takeda's Breach of Fiduciary Duty Claim Is Barred by
the Gist of the Action Doctrine...............................................................33

3. Takeda's Conversion Claim Is Barred by
the Gist of the Action Doctrine...............................................................35

4. Takeda's Money Had and Received Claim Is Not Barred by
the Gist of the Action Doctrine...............................................................37

E. Takeda's Remaining Claims Will Not Be Dismissed at This Stage
for Failure to State a Claim...........................................................38

1. Takeda's Breach of Contract Claim Will Not Be Dismissed
for Failure to State a Claim ............................................................................. 39

2. Takeda's Claim for Money Had and Received Will Not Be Dismissed for
Failure to State a Claim ................................................................................... 40

F. Leave to Amend the Complaint Will Be Granted ........................................ 41

V. CONCLUSION ................................................................................................. 42

## I. INTRODUCTION

This case involves allegations of fraud involving the use of patents in widely available pharmaceutical drugs. Defendant Dr. Spiridon Spireas, along with Dr. Sanford Bolton, created four patents that allowed nondissolvable, active pharmaceutical ingredients to dissolve in water, and then allowed these liquid drugs to be converted into pill form. Spireas and Bolton licensed their patented technology to Mutual Pharmaceutical Company, Inc. ("Mutual") and United Research Laboratories, Inc. ("United") to create the successful generic drugs felodipine and propafenone, which respectively treat high blood pressure and atrial fibrillation (irregular heart rates).[1] Over the course of a decade, Mutual and United paid Spireas and Bolton approximately $150 million in royalties for the use of the patented technology in these drugs.

Now, Plaintiff Takeda Pharmaceuticals, U.S.A., Inc. ("Takeda"), successor-in-interest to Mutual, alleges that Spireas lied about the use of the patented technology in the drugs. Takeda claims that the patents were not actually used in the drugs, and that Spireas was not entitled to receive any royalties. Takeda seeks to recoup the $150 million in royalty payments from Spireas

---

[1] Spireas, as Vice President of Research and Development for Mutual, supervised the development of the two drugs. Mutual, however, using Spireas' formulation, manufactured the felodipine and propafenone drugs. (Doc. No. 1 ¶ 10-11, Doc. No. 18 ¶ 14.)

alone.[2]  To do so, it initiated this action against Spireas for fraud/misrepresentation (Count I), breach of contract (Count II), breach of the duty of loyalty (Count III), breach of fiduciary duty (Count IV), conversion (Count V), and money had and received (Count VI).  (Doc. No. 1.) Spireas filed a Motion to Dismiss, which is now ripe for a decision.

## II.    BACKGROUND

As a doctoral candidate at St. John's University College of Pharmacy and Allied Health Professions, Dr. Spiridon Spireas met his doctoral advisor, Dr. Sanford Bolton.  (Doc. No. 16-1 ¶¶ 9-11.)  From 1988 to 1993, Spireas and Bolton worked together, in part researching "liquisolid technology," which refers to powdered forms of liquid medications.  (Id. ¶¶ 9-12.)  Liquisolid technology allows nondissolvable substances, or poorly soluble substances, to dissolve in water, and then allows these liquid drugs to be converted into a powdered or pill form.  (Id. ¶ 13.)  In 1993, Spireas received his doctoral degree and left St. John's University.  (Id. ¶ 14.)  The following year, Dr. Bolton retired from the university.  (Id. ¶ 15.)

Two years later, in 1996, Spireas and Bolton began filing applications with the United States Patent and Trademark Office ("PTO") to obtain patents on their liquisolid technology.  (Id. ¶ 16.)  The two men also formed an entity named Hygrosol Pharmaceutical Corp. ("Hygrosol") with the hope that their applications would be approved and that they could license their patents through the corporation.  (Id. ¶ 18.)

They first filed a patent application with the PTO entitled "Liquisolid Systems and Methods of Preparing Same" (U.S. Application No. 08/658,514).  (Doc. No. 1 ¶ 32.)  On September 1, 1998, the PTO issued Patent No. 5,800,834 ("the '834 patent").  (Id.)  "The claims of the '834 patent cover methods of using nonvolatile solvents in drug formulations to create

---

[2]    Bolton passed away in 2011.  Takeda has chosen not to include his estate as a defendant in this action.

'liquisolid systems' or 'liquisolid microsystems.'" (Id.) The '834 patent names Spireas and Bolton as the inventors. (Id.)

Spireas and Bolton went on to receive two additional patents that were extensions of the liquisolid technology claimed in the '834 patent. (Id. ¶¶ 33-34.) On October 19, 1999, the PTO issued Patent No. 5,986,550 ("the '550 patent") to the two inventors, which "cover[ed] formulations produced by using a specified series of steps to convert a 'liquid medication' into a 'liquisolid system' or 'liquisolid microsystem,' where a 'liquid medication' is defined in the specification to include a drug suspended or dissolved in a non-volatile solvent." (Id. ¶ 33.) Additionally, on August 1, 2000, the PTO issued Patent No. 6,096,337 ("the '337 patent") to Spireas and Bolton, which was a continuation of the liquisolid technology. (Id.)

The fourth and final patent in this case was issued on July 23, 2002 to Spireas alone. (Id. ¶ 34.) Like the other three patents, Patent No. 6,423,339 ("the '339 patent") is an extension of the liquisolid technology. (Id. ¶ 34.)

The use of these four patents is central to this case. What happened with, or without, the patented liquisolid technology is the subject of this (and other) pending litigation.

### A.    Mutual and United Entered into a Contract with Hygrosol, Spireas, and Bolton to License the Patented Liquisolid Technology

After filing patent applications and creating Hygrosol, Spireas and Bolton sought to commercialize their soon-to-be patented liquisolid technology. (Doc. No. 16 at 7.) In 1998, they began negotiating with Mutual and "its sister company," United, about the possibility of licensing the liquisolid technology for the formulation of generic pharmaceutical drugs. (Doc. No. 1 ¶¶ 18-19.)

On June 12, 1998, Mutual and United executed a license agreement with Spireas, Bolton, and Hygrosol (the "License Agreement"). (Id. ¶ 18.) Under the terms of the License Agreement,

Mutual and United received an exclusive license to use the liquisolid patents, once issued to Spireas and Bolton, to create new drug products. (Id., Ex. A ¶ 2.1.) In return, Mutual and United agreed to pay royalties to Hygrosol. (Id. ¶ 4.1-4.2.)

**B.  Spires Becomes Vice President of Research and Development at Mutual and Develops the Pharmaceutical Drugs Felodipine and Propafenone**

Shortly after executing the License Agreement, Mutual hired Spireas as its Vice President of Research and Development. (Id. ¶ 10.) Mutual and Spireas agreed that he would develop generic versions of two drugs, felodipine and propafenone. (Id. ¶ 11.) On March 7, 2000, they memorialized this agreement when Spireas signed an engagement letter. (Id., Ex. B.) Thereafter, Spireas worked with Mutual's scientists to develop generic felodipine and propafenone formulations. (Id. ¶ 12.) Spireas successfully created these pharmaceutical products and represented that the two generic drugs used the patented liquisolid technology. (Id. ¶¶ 13, 48.)

On September 28, 2000, Mutual and United submitted an Abbreviated New Drug Application ("ANDA") to the Food and Drug Administration ("FDA") for generic propafenone tablets to treat atrial fibrillation (irregular heart rates). (Id. ¶ 47.) A year later, on November 29, 2001, the FDA approved Mutual's ANDA for generic propafenone tablets. (Id. ¶ 57.) Mutual and United then began selling generic propafenone. (Id.) In 2002, Mutual and United made the first royalty payment to Hygrosol for the use of the patented liquisolid technology in the propafenone formulation. (Id.) Over the course of the next decade, from 2002 to 2012, Mutual and United paid Hygrosol approximately $3.7 million in propafenone royalties. (Id. ¶ 59.)

Like the propafenone formulation, Mutual and United submitted an ANDA for generic felodipine extended-release tablets to treat high blood pressure. (Id. ¶¶ 46-47.) On June 6, 2000, shortly before it submitted the ANDA for propafenone, Mutual filed an ANDA for felodipine. (Id. ¶ 46.) Unlike the propafenone ANDA, the felodipine ANDA took much longer to approve.

On February 6, 2004, more than four years after filing the ANDA, the FDA approved Mutual's ANDA for generic felodipine extended-release tablets. (Id. ¶ 58.) By this time, however, Mutual's relationship with Spireas had soured. On September 28, 2004, Mutual fired Spireas. (Id. ¶ 54.) Shortly thereafter, Mutual began selling felodipine. (Id.) From 2004 to 2012, Mutual and United paid Hygrosol approximately $146.4 million in felodipine royalties. (Id. ¶ 59.) Spireas and Bolton equally shared the royalties paid to Hygrosol. (Id.)

### C. Prior Actions Which Relate to the Patented Liquisolid Technology

#### 1. St. John's University Sues Spireas, Bolton, and Hygrosol, Disputing the Ownership of the Patented Liquisolid Technology

On November 18, 2008, after learning of Spireas and Bolton's success with the patented liquisolid technology, St. John's University filed suit against them, alleging that the inventors had breached their employment contracts with the University by concealing their breakthroughs on the liquisolid technology while the two worked there.[3] (Doc. No. 16-2 at 4, Doc. No. 18 at 15.) In essence, the University claimed that it should own the four patents, and not Spireas and Bolton. (Id.) On January 16, 2015, Spireas, Bolton, and Hygrosol settled the lawsuit with St. John's University. (Doc. No. 16-2 at 4.)

---

[3] Generally, "to the extent that [a] court considers evidence beyond the complaint in deciding a 12(b)(6) motion, it is converted to a motion for summary judgment." Anjelino v. N.Y. Times Co., 200 F.3d 73, 88 (3d Cir. 1999). However, when the defense of claim preclusion or res judicata is raised, a court may take notice of all facts necessary for the decision. See Conceicao v. Nat'l Water Main Cleaning Co., 650 F. App'x 134, 135 (3d Cir. 2016) (noting that a court may take notice of the records of a prior proceeding where claim preclusion is raised); see also Oneida Motor Freight, Inc. v. United Jersey Bank, 848 F.2d 414, 416 n.3 (3d Cir. 1988) (stating that the district court "had to examine the record of the prior . . . proceeding" to resolve the claim preclusion defense raised in the motion to dismiss). "Specifically, a court may take judicial notice of the record from a previous court proceeding between the parties." Conceicao, 650 F. App'x at 135. Here, the Court will consider the records from the prior proceedings for the purpose of determining whether claim preclusion applies.

## 2. Mutual and United then Sue Spireas, Bolton, and Hygrosol for Alleged Misrepresentations Involving the Ownership of the Patented Liquisolid Technology

After learning of the dispute with St. John's University, Mutual and United initiated an action on May 5, 2011 against Spireas, Bolton, and Hygrosol in the Court of Common Pleas of Philadelphia County ("Mutual v. Spireas"). (Doc. No. 16-1.) Mutual and United sought to recoup the $150 million in royalties paid under the License Agreement. (Id.) In light of the dispute with St. John's University, Mutual and United alleged that Spireas, Bolton, and Hygrosol did not own the patented liquisolid technology and therefore were not entitled to any royalty payments. (Doc. No. 16-1 ¶¶ 24-25.) Mutual and United raised breach of contract, fraudulent misrepresentation, and unjust enrichment claims against Spireas, Bolton, and Hygrosol. (Id. ¶¶ 56-79.) They also sought a declaratory judgment. (Id. ¶¶ 49-55.)

In response, Spireas, Bolton, and Hygrosol raised counterclaims against Mutual and United, seeking to recover unpaid royalties on metaxalone generics.[4]

On March 16, 2016, the Court of Common Pleas granted summary judgment in favor of Spireas, Bolton, and Hygrosol, and the claims against them were dismissed. (Doc. No. 16-2.) First, the Court of Common Pleas concluded that the claim for a declaratory judgment should be dismissed for lack of standing. (Id. at 7.) The court wrote:

> It is undisputed that [Spireas, Bolton, and Hygrosol] have settled their differences with St. John's University. As no threat of litigation, let alone any that is 'imminent and inevitable,' affects the rights of Mutual Pharmaceutical and United Research under the 1998 Licensing Agreement, plaintiffs do not have standing here to bring a claim under the Declaratory Judgment Act.

(Id.) Second, the state court held that the breach of contract claim would be dismissed because the damages alleged by Mutual and United were too speculative. (Id. at 7-8.) Third, it found

---

[4] Unpaid royalties on metaxalone generic pharmaceutical drugs are not at issue in this case.

that the gist of the action doctrine precluded the fraudulent misrepresentation claim. (Id. at 9-10.) Last, the Court of Common Pleas noted that the doctrine of unjust enrichment cannot serve as the basis for relief when a binding contract exists between the parties. (Id. at 10-11.) The remaining unjust enrichment claim then was dismissed. In sum, the Court of Common Pleas dismissed all of Mutual and United's claims against Spireas, Bolton, and Hygrosol. On April 3, 2017, the Pennsylvania Superior Court affirmed the decision to grant summary judgment in favor of Spireas, Bolton, and Hygrosol. (Doc. No. 16-3.)

Spireas, Bolton, and Hygrosol's remaining counterclaims against Mutual and United were scheduled to be mediated in February 2017.[5] (Doc. No. 16 at 23.) Mediation was delayed, however, with the filing of this action. (Id.)

---

[5] In addition to the counterclaims against Mutual and United raised in Mutual v. Spireas, two other pending state court actions were to be mediated in February 2017.

First, in Hygrosol v. Roberts, Spireas and Hygrosol asserted claims against Mutual and King Pharmaceuticals, Inc. ("King"). See Hygrosol Pharmaceutical Corp. & Spiridon Spireas, Ph.D. v. Richard Roberts, M.D., Ph.D., Pharmaceutical Holdings Co., Inc., Pharmaceutical IP Holdings, Inc., Mutual Pharmaceutical Co., Inc., United Research Laboratories, Inc., King Pharmaceuticals, Inc. & King Pharmaceuticals Research and Development, Inc., C.C. Phila, No. 12-11-00213 ("Hygrosol v. Roberts"). These claims were originally brought as counterclaims in Mutual v. Spireas, but were severed into a separate action by the state court due to the claims against King and other "non-Mutual entities." (Doc. No. 16 at 22 n.15.)

Second, in SigmaPharm v. Mutual, Spireas's other company, SigmaPharm, Inc. ("SigmaPharm") demanded payment under the SigmaPharm Development Agreement. See SigmaPharm, Inc. v. Mutual Pharmaceutical Co., United Research Laboratories, Inc., Richard Roberts, M.D., Ph.D., Pharmaceutical IP Holdings, Inc., Pharmaceutical Holdings Co., Inc., King Pharmaceuticals, Inc., & King Pharmaceuticals Research & Development, Inc., C.C. Phila., No. 12-01-01176 ("SigmaPharm v. Mutual"). "SigmaPharm maintains that Mutual entered into an agreement with King that Mutual would not manufacture a generic version of metaxalone based upon a SigmaPharm innovation. In return, King paid Mutual $35 million up front and then hundreds of millions of dollars in royalties going forward, for which fifty percent (50%) is owed to SigmaPharm." (Doc. No. 16 at 22 n.15.)

These two state court cases, along with the state court case of Mutual v. Spireas, have been pending for more than five years and were scheduled to be trial-ready in May 2017. (Doc.

### 3.      Spireas' Tax Court Proceedings

In 2013, the Internal Revenue Service ("IRS") challenged Spireas's tax treatment of the royalties he received under the License Agreement.  (Doc. No. 1 ¶ 60.)  Spireas had characterized the royalty payments as capital gains.  (Id.)

Takeda alleges that on October 23, 2014, at a hearing before the Tax Court, Spireas explained that the felodipine and propafenone formulations did not use the patented liquisolid technology.  (Id. ¶¶ 62, 64.)  On August 24, 2016, the Tax Court issued a memorandum finding that the royalty payments should have been characterized as ordinary income, rather than as capital gains.  (Doc. No. 31 at 2.)  In a footnote, the Tax Court stated, "On brief petitioners argue that the 'liquisolid patents did not cover Dr. Spireas's new, unique and patentable felodipine . . . technolog[y].'"[6]  Takeda claims that "[i]t was this statement that first alerted [it] to the truth regarding the felodipine and propafenone formulations."[7]  (Doc. No. 1 ¶ 69.)

---

No. 16 at 23.)  "In light of this advanced procedural posture, the parties agreed to attempt to mediate these actions . . . in February 2017."  (Id.)  Because all of Mutual's claims had been dismissed, the only pending claims to be mediated were the claims against Mutual, United, King, and their related parties.  (Id.)

[6]   The full footnote written by the Tax Court is provided as follows:

> On brief petitioners argue that the "liquisolid patents did not cover Dr. Spireas's new, unique and patentable felodipine * * * technolog[y]."  If that were so, it is hard to see how Mutual would have the rights to make and sell that Product. Mutual was granted its make-and-sell rights by the 1998 License Agreement, which defines those rights as rights to produce, market, and sell "Products containing the Technology."

(Doc. No. 31 at 29 n.5.)

[7]   The parties dispute when Takeda knew or should have known about the Tax Court testimony Spireas provided.

On October 23, 2014, Spireas testified in the Tax Court trial.  (Doc. No. 16-4 at 3.)  The following occurred:

Q:  So I'm just going to ask you some questions about Exhibits 1, 2, and 3 collectively.  Who were the inventors of patents 1, 2, and 3?

A:  Myself and Mr. Bolton.

Q:  And did these patents cover the felodipine and propafenone formulation technologies?

A:  Definitely not.

Q:  Why not?

A:  Because the – I'll tell you about the claims of the patents (inaudible).  The propafenone and felodipine technologies are not currently connected to the claim (inaudible) first of all because both of them – both of the patents have no (inaudible) patents.  They claim both have a number of liquids to be used.  The – I'm sorry, I have it the other way.  Scratch that.  The patents are using exclusively non-volatile liquids whereas the compilation (inaudible) are based only –

The Court:  Don't get too far into the . . .

(Doc. No. 16-4 at 124.)  A few weeks later, on November 5, 2014, Spireas was deposed in the matter of <u>SigmaPharm, Inc. v. Mutual Pharmaceutical Co., Inc.</u>, a pending state court action.  (Doc. No. 31, Ex. N.)  Counsel for Takeda was present at this deposition and questioned Spireas.  (<u>Id.</u>)  During the deposition, counsel asked Spireas whether the Tax Court proceeding "had anything to do with Mutual."  (<u>Id.</u> at 428:14-15.)  Spireas replied as follows:

Q [Takeda's counsel]:  Does the tax dispute have anything to do with Mutual?

A [Spireas]:  To some extent, maybe.

Q [Takeda's counsel]:  Does the tax dispute have anything to do with Hygrosol or SigmaPharm Agreements at issue in this case?

A [Spireas]:  To the Hygrosol Agreement at issue in this case.

(Doc. No. 32 at 428:14-21.)  On December 2, 2014, a transcript of the trial testimony in the Tax Court was docketed and made available to the public.  (Doc. No. 28 at 5.)

On October 20, 2015, in the related state court case of <u>Mutual v. Spireas</u>, Mutual moved to compel Spireas to produce "deposition testimony or trial testimony from Dr. Spireas" in his tax case.  (Doc. No. 16-5 at 6, Ex. 6 at 18:22-21:3.)  Although the state court was under the

**D.      Procedural History of This Action**

Following Takeda's discovery of the statements made to the Tax Court, Takeda initiated this action on January 31, 2017 against Spireas. (Doc. No. 1.) As noted earlier, the Complaint raises the following claims: fraud/misrepresentation (Count I), breach of contract (Count II), breach of the duty of loyalty (Count III), breach of fiduciary duty (Count IV), conversion (Count V), and money had and received (Count VI). (Id.) Takeda alleges that Spireas intentionally concealed the fact that the patented liquisolid technology was not used in the felodipine and propafenone drugs to obtain approximately $150 million in royalty payments from Mutual. (Id.) Takeda further alleges that it did not learn of this fact until August 24, 2016, when the Tax Court published its memorandum. (Id. ¶ 69.)

On April 3, 2017, Spireas filed a Motion to Dismiss the Complaint in its entirety. (Doc. No. 16.) On April 17, 2017, Takeda filed a Response in Opposition to the Motion to Dismiss. (Doc. No. 18.) Thereafter, Spireas filed a Reply. (Doc. No. 23.) On May 19, 2017, a hearing was held on the Motion. (Doc. Nos. 26, 27.) The Motion is now ripe for a decision.[8]

---

impression that such testimony was under seal, it suggested that Mutual should request the documents from the Tax Court itself. (Id. at 20:6-12.)

Defendant contends that Takeda was aware of the potential relevance of the Tax Court testimony and should have requested the testimony from the Tax Court, as instructed by the state court. (Doc. No. 28 at 2.)

In response, Plaintiff submits first that counsel for Spireas represented that the Tax Court records were unavailable. (Doc. No. 29 at 2.) Second, Plaintiff argues that it had no reason to suspect that the Tax Court records would reveal this alleged fraud. (Id.) As a result, Plaintiff alleges that it was alerted to the statement that Spireas made in the Tax Court only when it reviewed the Tax Court's memorandum of findings on August 24, 2016.

[8]     In reaching a decision, the Court has considered the Complaint (Doc. No. 1), the Motion to Dismiss the Complaint (Doc. Nos. 16, 17), Plaintiff's Response in Opposition (Doc. Nos. 18, 19, 20), Defendant's Reply (Doc. No. 23), the arguments made by counsel for the parties

## III.    STANDARD OF REVIEW

The motion to dismiss standard under Federal Rule of Civil Procedure 12(b)(6) is set forth in Ashcroft v. Iqbal, 556 U.S. 662 (2009).  After Iqbal it is clear that "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice" to defeat a Rule 12(b)(6) motion to dismiss.  Id. at 678; see also Bell Atl. Corp. v. Twombly, 550 U.S. 544 (2007).  "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face."  Ethypharm S.A. France v. Abbott Labs., 707 F.3d 223, 231 n.14 (3d Cir. 2013) (quoting Sheridan v. NGK Metals Corp., 609 F.3d 239, 262 n.27 (3d Cir. 2010)).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  Id.  Applying the principles of Iqbal and Twombly, the Third Circuit in Santiago v. Warminster Twp., 629 F.3d 121 (3d Cir. 2010), set forth a three-part analysis that a district court in this Circuit must conduct in evaluating whether allegations in a complaint survive a 12(b)(6) motion to dismiss:

> First, the court must "tak[e] note of the elements a plaintiff must plead to state a claim."  Second, the court should identify allegations that, "because they are no more than conclusions, are not entitled to the assumption of truth."  Finally, "where there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement for relief."

Id. at 130 (quoting Iqbal, 556 U.S. at 675, 679).

> This means that our inquiry is normally broken into three parts: (1) identifying the elements of the claim, (2) reviewing the complaint to strike conclusory allegations, and then (3) looking at the well-pleaded components of the complaint and evaluating whether all of the elements identified in part one of the inquiry are sufficiently alleged.

---

during the hearing on the Motion on May 19, 2017 (Doc. No. 27), the letter from counsel for Defendant sent to the Court on June 12, 2017 (Doc. No. 28), and the letter from counsel for Plaintiff sent to the Court on June 16, 2017 (Doc. No. 29).

<u>Malleus v. George</u>, 641 F.3d 560, 563 (3d Cir. 2011).

A complaint must do more than allege a plaintiff's entitlement to relief, it must "show" such an entitlement with its facts. <u>Fowler v. UPMC Shadyside</u>, 578 F.3d 203, 210-11 (citing <u>Phillips v. Cty. of Allegheny</u>, 515 F.3d 224, 234-35 (3d Cir. 2008)). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—'that the pleader is entitled to relief.'" <u>Iqbal</u>, 556 U.S. at 679 (alteration in original) (quoting Fed. R. Civ. P. 8(a)(2)). The "plausibility" determination is a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense." <u>Id.</u>

## IV.    ANALYSIS

Pursuant to Federal Rule of Civil Procedure 12(b)(6), Defendant seeks to dismiss the Complaint in its entirety. (Doc. No. 16.) The Court will address each of Defendant's arguments for dismissal in turn.

### A.    Takeda's Claims Are Not Barred by Claim Preclusion

Defendant contends that Takeda's claims are barred by the doctrine of claim preclusion. (Doc. No. 16 at 25-35.) "Claim preclusion, or res judicata, is a defense asserted when a case is essentially identical to one that has previously been adjudicated." <u>R&J Holding Co. v. Redevelopment Auth. of Cty. of Montgomery</u>, 670 F.3d 420, 427 (3d Cir. 2011). Its central purpose is "to require a plaintiff to present all claims arising out of the same occurrence in a single suit." <u>Blunt v. Lower Merion Sch. Dist.</u>, 767 F.3d 247, 277 (3d Cir. 2014) (internal quotation marks and brackets omitted). In doing so, courts "relieve parties of the cost and vexation of multiple lawsuits, conserve judicial resources, and, by preventing inconsistent decisions, encourage reliance on adjudication." <u>Marmon Coal Co. v. Dir., Office of Workers' Comp. Programs</u>, 726 F.3d 387, 394 (3d Cir. 2013) (internal quotation marks omitted). "To those

ends, the doctrine of [claim preclusion or] res judicata bars not only claims that were brought in a previous action, but also claims that could have been brought." Davis v. Wells Fargo, 824 F.3d 333, 342 (3d Cir. 2016) (internal quotation marks omitted).

Federal courts apply the claim preclusion law of the state in which the judgment was entered, and thus Pennsylvania claim preclusion law applies. Turner v. Crawford Square Apartments III, L.P., 449 F.3d 542, 548 (3d Cir. 2006) (citing Lance v. Dennis, 546 U.S. 459 (2006)). Pennsylvania's law of claim preclusion was summarized by the Pennsylvania Supreme Court in Balent v. City of Wilkes-Barre:

> Any final, valid judgment on the merits by a court of competent jurisdiction precludes any future suit between the parties or their privies on the same cause of action. [Claim preclusion or] [r]es judicata applies not only to claims actually litigated, but also to claims which could have been litigated during the first proceeding if they were part of the same cause of action.

669 A.2d 309, 313 (Pa. 1995) (citations omitted). For claim preclusion to apply, Pennsylvania law requires that the two actions share the following four conditions: "(1) the thing sued upon or for; (2) the cause of action; (3) the persons and parties to the action; and (4) the capacity of the parties to sue or be sued." R&J Holding Co., 670 F.3d at 427 (citing Bearoff v. Bearoff Bros., Inc., 327 A.2d 72, 74 (Pa. 1974)).

Takeda does not necessarily challenge all of the above requirements. Rather, it challenges whether the thing sued for is the same, whether the causes of action are the same, and whether the parties are the same.

### 1.    "The Thing Sued upon or for" Is the Same in This Case and the Prior State Court Action

"The thing sued upon or for" is the same in this action and the pending state court litigation. Bearoff, 327 A.2d at 74. In both cases, Takeda (or its predecessor Mutual) is seeking to recoup the royalties paid to Hygrosol. (Doc. No. 1 ¶ 59, Doc. No. 16-1 ¶¶ 38-39.)

In the pending state case of <u>Mutual v. Spireas</u>, Mutual alleged that "[it] developed and sold two Products, Felodipine and Propafenone, that were subject to the License Agreement" and that "between 2002 and 2011, Mutual paid approximately $146 million under the License Agreement." (Doc. No. 16-1 ¶¶ 38-39.) Mutual also alleged that it continued to pay Hygrosol under the License Agreement while it litigated its claims. (<u>Id.</u> ¶ 41.) In this earlier case, Mutual demanded a return of all the royalties paid to Hygrosol. (<u>Id.</u> ¶¶ 55, 61, 69, 77.)

In the instant action before this Court, Takeda seeks the exact same royalty payments. In the Complaint, Takeda alleges that "[f]rom 2002 to 2012, Mutual paid Hygrosol approximately $3.7 million in propafenone royalties and $146.4 million in felodipine royalties." (Doc. No. 1 ¶ 59.) Like in <u>Mutual v. Spireas</u>, Takeda here demands repayment of these same royalties. (<u>Id.</u>) Thus, the thing sued for is the same in this action and the pending state court litigation.

## 2. The Causes of Action Are Not the Same in This Case and the Prior State Court Action

The causes of action alleged in the pending state court case and this action are not the same to invoke claim preclusion. "[T]here is no single definition of 'cause of action' for purposes of claim preclusion." <u>Davis</u>, 824 F.3d at 342. Rather, courts "take a broad view of what constitutes the same cause of action and that [claim preclusion] or res judicata generally is thought to turn on the essential similarity of the underlying events giving rise to the various legal claims." <u>Blunt</u>, 767 F.3d at 277. The focus, therefore, is on the facts rather than legal theories. <u>See Elkadrawy v. Vanguard Grp.</u>, 584 F.3d 169, 173 (3d Cir. 2009) (stating that the "analysis does not depend on the specific legal theory invoked"). Claim preclusion bars a claim that "arises from the same set of facts as a claim adjudicated on the merits in the earlier litigation." <u>Blunt</u>, 767 F.3d at 277. "The focal point of the 'same cause of action' analysis is not whether there are new facts occurring after the final judgment, but whether the <u>material</u> facts alleged in

each suit are the same, and whether the witnesses and documentation required to prove the allegations are the same." Foster v. Deneberg, 616 F. App'x 472, 474 (3d Cir. 2015) (citation omitted).

For example, in Foster v. Deneberg, the plaintiff initiated an action for fraud, violations of the Racketeer Influenced and Corrupt Organizations Act ("RICO"), and related commercial tort claims relating to a real estate transaction in both the United States District Court and the Philadelphia Court of Common Pleas. 616 F. App'x at 473. The district court dismissed the complaint for failure to state a RICO claim. Id. Three years later, the plaintiff brought another RICO and state law suit alleging ongoing conduct after the earlier judgment. Id. The United States Court of Appeals for the Third Circuit affirmed the dismissal of the second case, finding that "continuation of the same fraudulent activity" did not raise a new cause of action as the material facts in each suit were the same. Id. at 475.

Unlike Foster, the material facts at issue here are different from those presented in the state court case. In the pending state case of Mutual v. Spireas, Mutual alleged that St. John's University was the owner of the patented liquisolid technology, not Spireas or Bolton. (Doc. No. 18 at 18.) Mutual claimed that Spireas and Bolton "falsely represented . . . in 1997 and 1998 that they and not [St. John's University] owned" the patents. (Id.) Mutual also alleged that Spireas and Bolton concealed the fact that they had entered into agreements with St. John's University that gave the university ownership of the patents. (Id. at 19.) The key evidence and witnesses Mutual needed to prove these allegations would have included:

> Spireas and Bolton's agreements with [St. John's University], the negotiation and execution of the [License] Agreement, testimony from witnesses knowledgeable about [St. John's University's] intellectual property policies and whether Spireas and Bolton were aware of them, and evidence of how much Mutual would have paid for the patents had it known that they were owned by [St. John's University].

(Id.)

In contrast, the Complaint here alleges that Spireas falsely represented to Mutual in product development reports that felodipine and propafenone were created using the patented liquisolid technology.  (Doc. No. 1 ¶¶ 49, 51.)  The Complaint also asserts that Spireas repeatedly made statements to Mutual and its officers suggesting that the patented liquisolid technology was used in the felodipine and propafenone formulations.  (Id. ¶¶ 92-97.)  However, the Complaint provides:

> [O]n information and belief, Spireas intentionally included small amounts of nonvolatile solvent in the felodipine and propafenone formulations that he developed for Mutual in an effort to deceive Mutual into believing that those formulations used his patented "liquisolid" technology, when in fact he knew that no patented "liquisolid systems" or "liquisolid microsystems" of felodipine and propafenone were formed.

(Id. ¶ 96.)  Takeda further alleges that as Mutual's successor-in-interest it first learned of this fact after Spireas "admitted to the Tax Court that neither generic drug formulation used the technology."  (Doc. No. 18 at 19.)  The key evidence in this case will include "testimony from Mutual employees about Spireas's representations regarding the technology used in the generic felodipine and propafenone formulations, whether the formulations actually used the patented technology, and what Spireas and his lawyers told the Tax Court."  (Id.)

In sum, the pending state court case and this instant action contain distinct material facts and rely upon different key evidence and witnesses.  Therefore, the causes of action in the two cases are not the same as required to invoke claim preclusion.[9]

---

[9]  Accepting the facts alleged in the Complaint as true, Takeda received notice of the contents of Defendant's testimony when the Tax Court published its memorandum on August 24, 2016.  (Doc. No. 1 ¶ 69.)  Therefore, this piece of evidence was not available to Takeda when it instituted the state court action on May 5, 2011.  (Doc. No. 16-1.); see Morgan v. Covington Twp., 648 F.3d 172, 178 (3d Cir. 2011) (holding that "res judicata does not bar

### 3. Persons or Parties to the Action Are the Same in This Case and the Prior State Court Action

The third and final factor contested is whether there is identity of the parties in this action and the pending state case of Mutual v. Spireas. "It is well established that [claim preclusion or] res judicata applies to parties who were involved in the previous litigation . . . and those in privity with parties who were involved in the previous litigation." Jett v. Beech Interplex, Inc., No. 02-9131, 2004 WL 1595734, at *4 (E.D. Pa. July 15, 2004). Courts have found that the privity requirement may be met when the non-party was "adequately represented by someone with the same interests who [wa]s a party" in the prior proceeding. Nationwide Mut. Fire Ins. Co. v. George V. Hamilton, Inc., 571 F.3d 299, 312 (3d Cir. 2009) (citing Taylor v. Sturgell, 553 U.S. 880 (2008)).

In the pending state court case Mutual v. Spireas, Mutual and United sued Spireas, Bolton, and Hygrosol. Here, Takeda is suing Spireas. The substitution of Takeda for Mutual does not materially change the parties. In fact, Takeda is the "successor-in-interest to Mutual." (Doc. No. 1 ¶ 1.) This relationship between Mutual and Takeda, therefore, satisfies the privity requirement. See Jett, 2004 WL 1595734, at *4 (applying Pennsylvania claim preclusion law to hold that the identity of the parties requirement is satisfied when the relationship between entities or individuals is close enough that the party's interests were represented in the prior action). Therefore, there is identity of the parties to invoke claim preclusion.

In sum, although there is identity of the parties and "the thing sued upon or for" is the same in the two proceedings, the causes of action are not substantially similar. Since the causes of action in the pending state court case and this case are different, the claims here cannot be barred by claim preclusion.

---

claims that are predicated on events that postdate the filing of the initial complaint" (italics omitted)).

**B.** **Takeda's Claims Need Not Be Dismissed for Failure to Join an Indispensable Party, But Mutual Delaware Must Be Joined in This Litigation**

Defendant argues that the Complaint must be dismissed because Takeda failed to join United, an entity that he claims is indispensable to resolving this litigation. (Doc. No. 16 at 35-40.) As noted, United entered into the License Agreement with Mutual, jointly securing Mutual and United's right to produce felodipine and propafenone. (Doc. No. 1, Ex. A.) Takeda alleges that United cannot be joined in this action, as Defendant argues it must, because United no longer exists. (Doc. No. 18 at 25.) Instead, Takeda asserts that United was merged into Mutual Pharmaceutical Company, Inc., a Delaware Corporation ("Mutual Delaware"), which is owned by Sun Pharmaceutical Industries, Ltd. ("Sun Pharma"). (Id.) Takeda argues that Mutual Delaware, as United's successor-in-interest, is not a necessary party because no per se rule exists requiring all parties to a contract at issue to be joined in a contract action. (Id. at 27.) Takeda further argues that even if Mutual Delaware was a necessary party, it is diverse from Spireas and therefore would not destroy subject matter jurisdiction. (Id. at 24.)

Federal Rule of Civil Procedure 12(b)(7) provides grounds for a motion to dismiss for "failure to join a party under Rule 19." Fed. R. Civ. P. 12(b)(7). Federal Rule of Civil Procedure 19 provides:

(a) Persons Required to Be Joined if Feasible.

(1) Required Party. A person who is subject to service of process and whose joinder will not deprive the court of subject-matter jurisdiction must be joined as a party if:

(A) in that person's absence, the court cannot accord complete relief among existing parties; or

(B) that person claims an interest relating to the subject of the action and is so situated that disposing of the action in the person's absence may:

(i) as a practical matter impair or impede the person's ability to protect the interest; or

(ii) leave an existing party subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations because of the interest.

(2) Joinder by Court Order. If a person has not been joined as required, the court must order that the person be made a party. A person who refuses to join as a plaintiff may be made either a defendant or, in a proper case, an involuntary plaintiff.

(3) Venue. If a joined party objects to venue and the joinder would make venue improper, the court must dismiss that party.

(b) When Joinder Is Not Feasible. If a person who is required to be joined if feasible cannot be joined, the court must determine whether, in equity and good conscience, the action should proceed among the existing parties or should be dismissed. The factors for the court to consider include:

(1) the extent to which a judgment rendered in the person's absence might prejudice that person or the existing parties;

(2) the extent to which any prejudice could be lessened or avoided by:

(A) protective provisions in the judgment;

(B) shaping the relief; or

(C) other measures;

(3) whether a judgment rendered in the person's absence would be adequate; and

(4) whether the plaintiff would have an adequate remedy if the action were dismissed for nonjoinder.

Fed. R. Civ. P. 19(a)-(b). "A Rule 19 inquiry is bifurcated." Guthrie Clinic, Ltd. v. Travelers Indem. Co. of Ill., 104 F. App'x 218, 221 (3d Cir. 2004). First, under Rule 19(a), a court asks whether a party is necessary to an action. Tullett Prebon PLC v. BGC Partners, Inc., 427 F. App'x 236, 239 (3d Cir. 2011). If a party is deemed necessary, then joinder must occur if feasible. Id. However, if "the addition of a necessary party would divest a court of subject

matter jurisdiction, then a court must determine whether in 'equity and good conscience' the action should proceed without a party, or whether the action should be dismissed, 'the absent person thus regarded as indispensable.'" <u>Guthrie Clinic, Ltd.</u>, 104 F. App'x at 221. Accordingly, a finding of indispensability under Rule 19(b) necessitates dismissal for lack of subject matter jurisdiction. <u>Id.</u>

Defendant argues that United is an indispensable party that would divest the Court of subject matter jurisdiction. (Doc. No. 16 at 35-40.) In contrast, Takeda asserts that United no longer exists, that its successor-in-interest is not a necessary party, and that, in the alternative, if its successor is deemed a necessary party, joining it would not destroy subject matter jurisdiction. (Doc. No. 18 at 24-31.)

### 1. United Is a Necessary Party

United is a necessary party to this litigation. Under Rule 19(a), a court must first ask whether a party is necessary to an action. <u>Tullett Prebon PLC</u>, 427 F. App'x at 239. A party is "necessary" if "in that person's absence, the court cannot accord complete relief among existing parties." Fed. R. Civ. P. 19(a)(1)(A). "It is well-established that a party to a contract which is the subject of the litigation is considered a necessary party." <u>Mattia v. Allstate Ins. Co.</u>, No. 14-2099, 2014 WL 2880302, at *5 (E.D. Pa. Jun. 24, 2014). "In a breach of contract claim, all parties to the contract should ordinarily be joined." <u>Rashid v. Kite</u>, 957 F. Supp. 70, 74 (E.D. Pa. 1997).

Here, Takeda, as the successor-in-interest to Mutual, filed suit against Spireas for various contractual and tort claims, all of which relate to the License Agreement. (Doc. No. 1.) Mutual and United, however, entered into the License Agreement. (Doc. No. 1, Ex. A.) Both entities were granted the right to license the patented liquisolid technology for the production of

felodipine and propafenone.  (Doc. No. 1, Ex. A.)  In exchange for licensing rights, Mutual and United agreed to pay royalties to Hygrosol.  (Id.)

Takeda seeks to litigate Mutual and United's rights under the License Agreement.  See Dickson v. Murphy, 202 F. App'x 578 (3d Cir. 2006) (holding that non-joined signatories to an asset purchase agreement and an agreement to purchase a boat and boat slips were necessary parties under the joinder rule, in an action alleging various fraud, contract, and quasi-contract claims related to the agreements).  Takeda aims to prove that felodipine and propafenone do not use the patented liquisolid technology to avoid royalty payments to Spireas.  This obligation, if found to be void, would have a substantial effect on United and Spireas.  For example, a finding implicating that felodipine and propofenone were not covered by Defendant's patent could adversely affect United.  Similarly, a ruling in Takeda's favor could cause Defendant to bear multiple or inconsistent obligations.  United, therefore, is a necessary party that should be joined.

### 2.    Joining United Would Destroy Subject Matter Jurisdiction

United is a necessary party whose joinder will destroy subject matter jurisdiction.  This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1332.  (Doc. No. 1 ¶ 3.)  Section 1332 provides:

> (a) The district courts shall have original jurisdiction of all civil actions where the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and is between—
>
> (1) citizens of different States . . . .

28 U.S.C. § 1332(a)(1).  For diversity purposes, a corporation is a citizen of both its state of incorporation and the state "where it has its principal place of business."  28 U.S.C. § 1332(c)(1).  Here, Spireas is "a citizen of Pennsylvania," Takeda is "a citizen of Delaware and Illinois," and "the amount in controversy exceeds $75,000."  (Doc. No. 1 ¶ 3.)  However, United is "a Pennsylvania Corporation with its principal place of business at 1100 Orthodox Street,

Philadelphia, Pennsylvania 19124." (Doc. No. 16-1 ¶ 2.) United and Spireas are both Pennsylvania citizens. Thus, if United is joined in this action, the Court will be divested of subject matter jurisdiction, and the action will be dismissed. However, because Plaintiff alleges that United no longer exists, the Court must assess whether joinder of its successor-in-interest is feasible. (Doc. No. 18 at 25.)[10]

### 3. Since United No Longer Exists, Its Successor-in-Interest Mutual Delaware Must Be Joined

Takeda alleges that United no longer exists and that its successor-in-interest, Mutual Delaware[11] is an entity whose joinder will not destroy diversity jurisdiction.

Takeda claims that, in 2012, United was merged into Mutual Delaware, which is owned by Sun Pharma. (Doc. No. 18 at 25.) According to Takeda, Mutual Delaware was created as part of Takeda's sale of "assets relating to generic felodipine and propafenone" to Sun Pharma. (Id.) In other words, Mutual Delaware, Sun Pharma's subsidiary, is now both the successor-in-interest to United and the owner of the assets relating to felodipine and propafenone, the two drugs at issue in this case. Therefore, Mutual Delaware, like United, is necessary to this litigation.

Accepting all of Plaintiff's factual allegations as true, joining Mutual Delaware to this litigation will not destroy subject matter jurisdiction. As previously stated, diversity of citizenship jurisdiction requires complete diversity between the parties and that the amount in

---

[10] As previously stated, if a party is required to be joined, but it is not feasible to join the party, the Court must "in equity and good conscience," decide "whether the action should proceed among the existing parties or should be dismissed." Fed. R. Civ. P. 19(b). Because United no longer exists, the Court need not reach the issue of whether it must join United or dismiss this action.

[11] Takeda states that Mutual Delaware "was created specifically as part of the 2012 corporate transactions and is entirely separate from the Pennsylvania [c]orporation called Mutual Pharmaceutical Company, Inc. that signed the [License] Agreement[] and merged into Takeda." (Doc. No. 18 at 25.)

controversy exceeds $75,000. 28 U.S.C. § 1332(a)(1). Spireas is "a citizen of Pennsylvania," Takeda is "a citizen of Delaware and Illinois," and "the amount in controversy exceeds $75,000." (Doc. No. 1 ¶ 3.) In addition, "Mutual Delaware is incorporated in Delaware and has its principal place of business is New Jersey." (Doc. No. 18 at 26.) Since Takeda and Mutual Delaware have a diverse citizenship from Spireas, and the amount in controversy exceeds $75,000, joining Mutual Delaware to this litigation will not destroy subject matter jurisdiction. Therefore, Takeda will be required to join Mutual Delaware to this case.[12]

### C. All Claims Except for Takeda's Breach of Contract Claim in Count II Are Not Barred by the Statute of Limitations

Defendant asserts that all claims, except for Takeda's breach of contract claim in Count II of the Complaint, are barred by the applicable state statute of limitations. (Doc. No. 16 at 41-43.) Takeda raises the following claims against Spireas: fraud/misrepresentation in Count I, breach of contract in Count II, breach of the duty of loyalty in Count III, breach of fiduciary duty in Count IV, conversion in Count V, and money had and received in Count VI. (Doc. No. 1.)

A motion to dismiss may be granted if "the time alleged in the statement of a claim shows that the cause of action has not been brought within the statute of limitations." Williamson v. City of Philadelphia, 169 F. Supp. 3d 630, 633 (E.D. Pa. 2016) (citing Bethel v. Jendoco Constr. Corp., 570 F.2d 1168, 1174 (3d Cir. 1978)). Pennsylvania imposes a two-year statute of limitations on tort claims.[13] 42 Pa. Const. Stat. § 5524. Generally, "Pennsylvania favors strict

---

[12] If it is later revealed that Mutual Delaware is a Pennsylvania citizen, the Court will dismiss the action for lack of subject matter jurisdiction. Additionally, if the Court is informed that United continues to exist and is the proper party to join in the suit, the Court will reconsider its ruling on Plaintiff's failure to join an indispensable party under Federal Rule of Civil Procedure 19.

[13] Conversely, a four-year statute of limitations applies to breach of contract claims. 42 Pa. Const. Stat. § 5525.

application of statutes of limitations." <u>N.Y. Cent. Mutual Ins. Co. v. Edelstein</u>, 637 F. App'x 70, 72 (3d Cir. 2016) (internal quotation marks omitted).

However, "[t]he doctrine of fraudulent concealment tolls the running of the limitations period in Pennsylvania when the defendant, through an independent act of affirmative concealment, causes the plaintiff to relax his vigilance or deviate from his right of inquiry through fraud or concealment." <u>Arndt v. Johnson & Johnson</u>, 67 F. Supp. 3d 673, 678 (E.D. Pa. 2014). Rather than requiring actual knowledge, fraudulent concealment only tolls the limitations period until the plaintiff should have been aware of the injury or its cause. <u>Id.</u> (citing <u>Urland By and Through Urland v. Merrel-Dow Pharm., Inc.</u>, 822 F.2d 1268, 1274 (3d Cir. 1987)).

Here, Defendant contends that Plaintiff could have learned of the injury—i.e., that the drugs did not use the patents—more than seventeen years ago when Defendant provided formal reports to Plaintiff about the drugs. (Doc. No. 16 at 41.) Defendant also contends that Plaintiff could have learned of the injury when it filed the state court proceeding more than six years ago. (<u>Id.</u>) These contentions, however, ignore the fact that Takeda has pled that Spireas fraudulently concealed information about the drugs until as late as 2016.

Takeda argues that the two year statute of limitations for tort claims should be tolled until it received notice that Spireas did not use the patented liquisolid technology in the felodipine and propafenone formulations. (Doc. No. 18 at 36.) Accepting all of Plaintiff's allegations as true at the motion to dismiss stage, this Court agrees.

On October 23, 2014, Spireas testified before the Tax Court and allegedly stated that the felodipine and propafenone formulations did not contain the patented liquisolid technology. (Doc. No. 1 ¶ 64.) Although it attempted to obtain the Tax Court testimony sometime in 2015 in the state court proceedings, "Spireas refused to turn over his testimony in response to Mutual's

discovery requests." (<u>Id.</u> ¶ 80.) Therefore, Takeda did not receive notice of the contents of his testimony until the Tax Court published its memorandum on August 24, 2016. (<u>Id.</u> ¶ 69.) Approximately six months later, on January 31, 2017, Takeda initiated this action. (<u>Id.</u>) Since Takeda filed suit within two years of learning of Spireas's testimony, the statute of limitations does not bar its tort claims here. Thus, Defendant's Motion to Dismiss for failure to file within the statute of limitations will be denied.

### D. All Claims Except for Takeda's Breach of Contract Claim in Count II and Money Had and Received Claim in Count VI Are Barred by the Gist of the Action Doctrine

Defendant contends that all claims, except for Takeda's breach of contract claim in Count II, are barred by the gist of the action doctrine.[14] (Doc. No. 16 at 43-45.) As noted, Takeda raises the following claims against Spireas: fraud/misrepresentation in Count I, breach of contract in Count II, breach of the duty of loyalty in Count III, breach of fiduciary duty in Count IV, conversion in Count V, and money had and received in Count VI. (Doc. No. 1.)

The gist of the action doctrine exists to "maintain the conceptual distinction between breach of contract claims and tort claims." <u>KZB Commc'ns Inc. v. CBE Techs. LLC</u>, 634 F. App'x 908, 910 (3d Cir. 2015) (quoting <u>eToll, Inc. v. Elias/Savion Advert., Inc.</u>, 811 A.2d 10, 14

---

[14] Defendant also asserts in the Motion to Dismiss that all claims, except for Takeda's breach of contract claim in Count II, are barred by the economic loss doctrine. (Doc. No. 16 at 43.) The gist of the action and the economic loss doctrines are similar. The economic loss doctrine "prohibits plaintiffs from recovering in tort economic losses to which their entitlement flows only from contract." <u>Werwinski v. Ford Motor Co.</u>, 286 F.3d 661, 671 (3d Cir. 2002) (internal quotation marks omitted). Its purpose is to "maintain the separate spheres of the law of contract and tort." <u>Duquesne Light Co. v. Westinghouse Elec. Corp.</u>, 66 F.3d 604, 620 (3d Cir. 1995) (internal quotation marks and brackets omitted). The economic loss doctrine "developed in the context of courts' precluding products liability tort claims in cases where one party contracts for a product from another party and the product malfunctions, injuring only the product itself." <u>Bohler-Uddenholm Am., Inc. v. Ellwood Grp., Inc.</u>, 247 F.3d 79, 104 (3d Cir. 2001) (internal quotation marks omitted). The gist of the action doctrine is "a better fit" for a non-products liability case. <u>Id.</u> at 104 n.11. As such, the Court will analyze Plaintiff's claims under only the gist of the action doctrine.

(Pa. Super. Ct. 2002)).  Under the gist of the action doctrine, a tort claim, which is based on a party's actions while carrying out a contractual agreement, "is barred when the gist or gravamen of the cause of action . . . although sounding in tort, is, in actuality, a claim against the party for breach of its contractual obligations."  Downs v. Andrews, 639 F. App'x 816, 819 (3d Cir. 2016) (omission in original) (quoting Bruno v. Erie Ins. Co., 106 A.3d 48, 53 (Pa. 2014)).

In determining whether the doctrine applies, a court must identify the nature of the duty breached.  Id.  The nature of the duty "is the critical determinative factor" as to "whether the claim is truly one in tort, or for breach of contract."  Id. (quoting Bruno, 106 A.3d at 68).  The nature of the duty is "established by the underlying averments supporting the claim in a plaintiff's complaint."  Bruno, 106 A.3d at 68.  As such, the substance of a plaintiff's allegations "are of paramount importance, and, thus, the mere labeling by the plaintiff of a claim as being a tort . . . is not controlling."  Downs, 639 F. App'x at 819 (omission in original) (quoting Bruno, 106 A.3d at 68).

If the facts alleged demonstrate that the duty breached was one created by the terms of the parties' contract, then the claim is one for breach of contract.  Bruno, 106 A.3d at 68.  Put another way, the claim is one for breach of contract if the duty is a promise to do something that the party would not have been obligated to do but for the contract.  Id.  In contrast, the claim is a tort if the facts establish "that the claim involves the defendant's violation of a broader social duty owed to all individuals, which is imposed by the law of torts and, hence, exists regardless of the contract."  Id.  To state a tort claim where a contract exists, the wrong alleged must be the gist of the action, with the contract only incidental.  Id. at 66.  Against this backdrop, the Court will address each of Plaintiff's claims in turn.

**1.     Takeda's Fraud/Misrepresentation Claim Is Barred by
the Gist of the Action Doctrine**

In Count I, Takeda contends that Defendant engaged in fraud and misrepresentation when

he represented to Mutual that felodipine and propafenone were promising candidates for use of

his liquisolid technology and that Mutual should develop these generic drugs pursuant to the

License Agreement.  (Doc. No. 1 ¶ 87.)  Takeda argues that this was the reason Mutual agreed to

pay royalties for the two drugs.  (Id. ¶ 89.)  Takeda further alleges that Defendant represented to

Mutual that the drugs did in fact use the liquisolid technology.  (Id. ¶ 92.)  Defendant submits

that this claim should be dismissed under the gist of the action doctrine.  (Doc. No. 16 at 43.)

The gist of the action doctrine precludes tort claims:

> (1) arising solely from a contract between the parties; (2) where the duties
> allegedly breached were created and grounded in the contract itself; (3) where the
> liability stems from a contract; or (4) where the tort claim essentially duplicates a
> breach of contract claim or the success of which is wholly dependent on the terms
> of a contract.

KZB Commc'ns Inc., 634 F. App'x at 910 (quoting eToll, Inc., 811 A.2d at 19).  As such, the gist

of the action doctrine bars "fraud in the performance of a contract."  Id. (quoting eToll, Inc., 811

A.2d at 20).

In KBZ Communications, Inc., a seller of video conference equipment entered into a

purchase agreement with a customer.  Id. at 909.  Seller performed under the contract, but the

customer failed to pay.  Id.  In its complaint, seller alleged that it continued to perform based on

the customer's promises to pay, and that the customer engaged in fraud and intentional

misstatements to induce continued performance.  Id.  The Court held that seller's claim for fraud

and misrepresentation was barred by the gist of the action doctrine.  Id. at 911.  What the seller

was truly alleging was that "the formation of the contract was, itself, the original problem insofar

as it represented a promise of payment that has not been fulfilled, and any subsequent 'lies' were

mere reiterations of the promise that the contract created." Id. Because the contract established the duty and not any principle of tort law or social policy, the gist of the action doctrine applied. Id.; see also Downs, 639 F. App'x at 820-21 (affirming dismissal of fraud claim under gist of the action doctrine, and reasoning that the primary basis for plaintiff's allegation of fraud was defendant's nonperformance and not a separate societal duty that may exist in other cases).

Takeda argues that its fraud claim derives from breaches of social duty that go beyond the obligations of the contract. (Doc. No. 18 at 40.) This Court, however, is required to determine the nature of the duty breached by examining "the underlying averments supporting the claim in a plaintiff's complaint." Bruno, 106 A.3d at 68. The Complaint includes no factual averments demonstrating that Defendant breached any social duty beyond the obligations of the contract. In fact, Takeda's factual averments demonstrate that the duty breached was indeed created by the contract. Takeda asserts that Defendant's false representations induced Mutual to pay him "millions of dollars in royalties under the [License Agreement]." (Doc. No. 1 ¶ 97.) Thus, the liability alleged stems from the contract itself. Here, the alleged lies were "mere reiterations of the promise that the contract created." KBZ Commc'ns, Inc., 634 F. App'x at 911. In sum, the crux of Takeda's fraud allegation is that Defendant falsely represented that his liquisolid technology was used. This obligation to use the liquisolid technology was part and parcel of the contract itself. For this reason, the Court will dismiss the fraud/misrepresentation alleged in Count I under the gist of the action doctrine.

> **2.    Takeda's Breach of the Duty of Loyalty and Breach of Fiduciary Duty Claims Are Barred by the Gist of the Action Doctrine**

Breach of fiduciary duty and breach of the duty of loyalty claims are barred by the gist of the action doctrine if the duty alleged is grounded in the obligations of a contract. Brown & Brown, Inc. v. Cola, 745 F. Supp. 2d 588, 620 (E.D. Pa. 2010). But many obligations that arise

under a fiduciary duty, such as a duty of loyalty, are imposed "'as a matter of social policy' rather than 'by mutual consensus.'" Id. (quoting Bohler-Uddenholm Am., Inc. v. Ellwood Grp., Inc., 247 F.3d 79, 105 (3d Cir. 2001)). These social policies derive from the law of torts rather than from the terms of the parties' contract. Id. As a result, as long as the fiduciary duties at issue extend beyond the limits of a "contract due to the parties' relative positions, the gist of the action doctrine will not bar a claim for breach of loyalty." Orthovita, Inc. v. Erbe, Civ. A. No. 07-2395, 2008 WL 423446, at *8 (E.D. Pa. Feb. 14, 2008) (citation omitted).

In contrast, "breach of fiduciary duty claims are barred by the gist of the action doctrine if there are 'no allegations of breach of fiduciary duty or duty of loyalty that transcend or exist outside the parties' contractual agreements." DePuy Synthes Sales, Inc. v. Globus Med., Inc., -- F. Supp. 3d -- 2017 WL 1493365, at *6 (E.D. Pa. 2017) (quoting Certainteed Ceilings Corp. v. Aiken, Civ. A. No. 14-3925, 2015 WL 410029, at *8 (E.D. Pa. Jan. 29, 2015)). Importantly, courts must be cautious when determining whether to dismiss a claim based on the gist of the action doctrine because parties are permitted to plead theories of liability in the alternative. USG Ins. Servs., Inc. v. Bacon, Civ. A. No. 2:16-cv-01024, 2016 WL 6901332, at *7 (W.D. Pa. Nov. 22, 2016).

    **i.**   **Takeda's Breach of the Duty of Loyalty Claim Is Barred by the Gist of the Action Doctrine**

In Count III, Takeda contends that Defendant breached his duty of loyalty to Mutual as its Vice President of Research and Development by falsely representing to Mutual that the felodipine and propafenone formulations developed under Defendant's supervision were covered by the patents. (Doc. No. 1 at 21.) Defendant submits that this claim is barred by the gist of the action doctrine because it replicates Takeda's claim for breach of contract. (Doc. No. 16 at 43.)

Here, Takeda merely alleges that Defendant falsely represented that felodipine and propafenone used the patented liquisolid technology and "enrich[ed] himself at Mutual's expense." (Doc. No. 1 ¶ 108.) The duty that Takeda alleges Defendant breached was grounded in the obligations of the License Agreement. That is, Defendant had a duty, based on the terms of the License Agreement, to develop drugs with the liquisolid technology and to supervise the development of these drugs. (Id. ¶¶ 25-27.) These obligations were formed by a mutual consensus between Takeda and Defendant, and were not imposed "as a matter of social policy." Brown & Brown, Inc., 745 F. Supp. 2d at 620 (quoting Bohler-Uddenholm Am., Inc., 247 F.3d at 105). The fiduciary duties at issue here therefore do not extend beyond the limits of the contract, and Takeda has alleged no duty that transcends the License Agreement.

Takeda contends that the instant case is similar to USG Insurance Services, Inc. v. Bacon, Civ. A. No. 2:16-cv-01024, 2016 WL 6901332 (W.D. Pa. Nov. 22, 2016), in that Defendant's fiduciary duties went beyond those set forth in the License Agreement. (Doc. No. 18 at 39-40.) In USG Insurance Services, Inc., defendant was a regional manager, whose employment was subject to a confidentiality and noncompetition agreement. 2016 WL 6901332, at *1. The agreement provided that defendant would not disclose confidential information, that he would return any such information should he leave the company, and that he would not compete with the company for one year after his employment ended. Id.

Following defendant's resignation, the company brought suit against defendant, alleging, among other claims, breach of fiduciary duty. Id. at *6. Defendant moved to dismiss the breach of fiduciary duty claim under the gist of the action doctrine as duplicative of the breach of contract claim. Id. at *7. The court declined to dismiss the breach of fiduciary duty claim, explaining that the complaint included "a plethora of factual allegations demonstrating how

[defendant's] position with [the company] gave rise to fiduciary duties separate and apart from [defendant's] obligations under the Agreement." Id. at *9. The court noted that, although there was "substantial overlap" between the company's breach of contract and breach of fiduciary duty claims, the complaint contained enough distinct facts to give it "a legal basis separate and apart" from the employment contract. Id.

Here, unlike in USG Insurance Services, Inc., the Complaint does not contain sufficient factual allegations to demonstrate how Defendant's position gave rise to a duty of loyalty that was separate and apart from his obligations under the License Agreement. The Complaint merely alleges that "[a]s a senior executive and officer of Mutual, [Defendant] owed a duty of loyalty to Mutual." (Doc. No. 1 ¶ 107.) Beyond this sole allegation, Takeda's breach of the duty of loyalty allegation focuses exclusively on his obligations under the License Agreement. For this reason, the Court finds that the breach of the duty of loyalty claim in Count III is barred by the gist of the action. Accordingly, the Court will dismiss this claim.

### ii.     Takeda's Breach of Fiduciary Duty Claim Is Barred by the Gist of the Action Doctrine

In Count IV, Takeda asserts that Defendant, as Mutual's Vice President of Research and Development, "breached his fiduciary duty by representing to Mutual that the felodipine and propafenone formulations developed under his supervision used the patented liquisolid technology when in fact they did not." (Doc. No. 1 ¶ 114.) In response, Defendant submits that this claim replicates a claim for breach of contract and thus is barred by the gist of the action doctrine. (Doc. No. 16 at 43.)

As previously stated, a claim for breach of fiduciary duty "is barred by the gist of the action doctrine if the fiduciary duty alleged is grounded in contractual obligations." DePuy Synthes Sales, Inc., 2017 WL 1493365, at *6 (internal quotation marks omitted). In Certainteed

Ceilings Corp. v. Aiken, the claim of the plaintiff employer for breach of fiduciary duty was barred by the gist of the action doctrine because the duty of the defendant employee was "grounded in his contractual obligations." 2015 WL 410029, at *11 (brackets omitted). There, defendant had signed a noncompete employment contract, which prohibited him from disclosing confidential information. Id. at *1. After resigning, defendant secured employment with a direct competitor. Id. Plaintiff brought suit for breach of contract and breach of fiduciary duty, among other claims, alleging that defendant disclosed or would disclose confidential information. Id. Defendant filed a motion to dismiss alleging, among other defenses, that the fiduciary duty claim was barred by the gist of the action doctrine. Id.

The court held that the breach of fiduciary duty claim was barred by the gist of the action doctrine, reasoning that the claim was "nothing more than a restatement of [plaintiff's] breach of contract claim." Id. at *11 (internal quotation marks and brackets omitted). Indeed, plaintiff's fiduciary duties were "inextricably tied to the terms of his [employment contract]." Id. at *10. The court noted that the complaint only identified one type of conduct that violated defendant's fiduciary duties—the disclosure of confidential information. Id. This conduct was also alleged to be a breach of the employment contract and did not "transcend or exist outside" of plaintiff's obligations under the employee agreement. Id. at *11 (internal quotation marks omitted). Instead, it was "imposed by mutual consensus." Id. (internal quotation marks omitted).

Here, Takeda argues that its breach of fiduciary duty claim is "based on the duties associated with [Defendant's] role as an officer and trusted employee of Mutual." (Doc. No. 18 at 39.) It further contends that "[t]hese breaches of a social duty, independent of the breaches of the [License Agreement], give rise to claims that are not barred under the gist of the action doctrine." (Id.) On the face of the Complaint, however, Takeda alleges no facts to support the

contention that Defendant breached a duty that "transcends or exists outside the parties' contractual agreements." DePuy Synthes Sales, Inc., 2017 WL 1493365, at *6 (quoting Certainteed Ceilings Corp., 2015 WL 410029, at *8). Takeda merely alleges that Defendant represented to Mutual that the drugs developed under his supervision "used the patented liquisolid technology when in fact they did not." (Doc. No. 1 ¶ 114.) This allegation is a restatement of Takeda's contract claim and therefore is barred by the gist of the action doctrine. For this reason, Takeda's claim for breach of fiduciary duty in Count IV will be dismissed.

### 3. Takeda's Conversion Claim Is Barred by the Gist of the Action Doctrine

Takeda also has brought a claim of conversion in Count V, arguing that Defendant "intentionally, willfully, and unlawfully interfered with, converted, misappropriated, and diverted millions of dollars belonging to Mutual that it paid [Defendant] in royalties that, in actuality, it did not owe." (Doc. No. 1 ¶ 117.) Defendant responds that the conversion claim is barred by the gist of the action doctrine as duplicative of Takeda's breach of contract claim. (Doc. No. 16 at 43.)

Conversion is "the deprivation of another's right of property in, or use or possession of, a chattel, without the owner's consent and without lawful justification." Brown & Brown, Inc., 745 F. Supp. 2d at 622 (internal quotation marks omitted). When the facts alleged in the complaint "reveal merely a damage claim for breach of contract," plaintiff has not pled a colorable claim for conversion. Id. (internal quotation marks omitted). Conversion claims have been dismissed where "the alleged entitlement to the chattel arises solely from the contract between the parties." Id. (citation omitted).

In Harold ex rel. Harold v. McGann, plaintiff sued defendant, alleging breach of contract and tort claims arising from a patent sale. 406 F. Supp. 2d 562, 564 (E.D. Pa. 2005). Plaintiff

alleged that defendant fraudulently induced him to sell defendant a patent and then breached the contract governing the patent sale and assignment. Id. at 564-65. Included in the agreement was the promise that defendant would pay plaintiff royalties on the sale of the patented product. Id. at 565. Plaintiff alleged that after entering into the agreement, he was not paid the royalties to which he was entitled on the patented products and that defendant made various misrepresentations regarding sales. Id. at 567-58. Defendant moved to dismiss plaintiff's tort claims, including his conversion claim, under the gist of the action doctrine. Id. 576-77.

The court concluded that the conversion claim was barred by the gist of the action doctrine because plaintiff's "right to the royalties at issue ar[ose] under the contract." Id. at 577. Indeed, "were it not for the [contract], defendants would not owe [p]laintiff any money at all." Id. Because plaintiff's tort claims arose out of defendant's alleged breach of contractual duties, the court held that those claims were barred by the gist of the action doctrine. Id.at 576; see also, e.g., Endless Summer Prods., LLC v. Mirkin, Civ. A. No. 15-6097, 2016 WL 807760, at *3 (E.D. Pa. Mar. 2, 2016) (dismissing conversion claim under gist of the action doctrine, and reasoning that the claim was based only on the breach of a duty imposed by the contract rather than a social duty); Bengal Converting Servs., Inc. v. Dual Printing, Inc., Civ. A. No. 11-6375, 2012 WL 831965, at *4 (E.D. Pa. Mar. 13, 2012) (holding that gist of the action doctrine applied to claim of conversion because the claim was grounded solely in defendant's failure to fulfill its obligations under the contract).

In the instant case, Takeda contends that its conversion claim should not be dismissed under the gist of the action doctrine because it "has alleged fraud distinct from its contract claim." (Doc. No. 18 at 40.) Here, however, the facts alleged in the Complaint "reveal merely a damage claim for breach of contract." Brown & Brown, Inc., 745 F. Supp. 2d at 622 (internal

quotation marks omitted).  Takeda alleges that Defendant made fraudulent misrepresentations as to whether the patent covered the two drugs.  But just as in <u>Harold ex rel. Harold</u>, Plaintiff's alleged "right to the royalties arises under the contract."  406 F. Supp. 2d 562, 577 (E.D. Pa. 2005).  Were it not for the License Agreement, no allegation would exist that Defendant was obligated to return to Plaintiff the royalties paid to him.  Because Plaintiff's conversion claim arises out of Defendant's alleged breach of the License Agreement, the conversion claim in Count V also is barred by the gist of the action doctrine and will be dismissed.

### 4.    Takeda's Money Had and Received Claim Is Not Barred by the Gist of the Action Doctrine

Finally in Count VI, Takeda alleges a claim for money had and received because Mutual made royalty payments to Plaintiff for sales of felodipine and propafenone based on the erroneous belief that the products were covered by the License Agreement.  (Doc. No. 1 ¶ 123.) Takeda alleges that the formulations for the drugs were actually confidential information belonging to Mutual, "free of any royalty obligation" under the License Agreement.  (<u>Id.</u> ¶ 124.) Based on this contention, Takeda argues that it "would be inequitable, unjust, and unconscionable to allow [Defendant] to retain the royalty payments."  (<u>Id.</u> ¶ 125.)  Defendant contends that the money had and received claim is barred by the gist of the action doctrine. (Doc. No. 23 at 13.)

"A claim for 'money had and received' is a common law action 'by which the plaintiff could recover money paid to the defendant, the money usually being recoverable because (1) the money had been paid by mistake or under compulsion, or (2) the consideration was insufficient.'"  <u>Springfield Twp. v. Mellon PSFS Bank</u>, 889 A.2d 1184, 1186 n.2 (Pa. 2005) (quoting <u>Action for Money Had and Received</u>, <u>Black's Law Dictionary</u> 29 (10th ed. 2014)).  A claim for money had and received sounds in implied, or quasi-contract.    <u>Sterling v.</u>

Redevelopment Auth. of the City of Phila., Civ. A. No. 10-2406, 2011 WL 3204845, at *6 (E.D. Pa. July 28, 2011).

Defendant has provided no binding precedent, and this Court is not aware of any, which holds that a cause of action for money had and received should be dismissed under the gist of the action doctrine. Courts in other districts, however, have declined to apply the gist of the action or the related economic loss doctrine to claims for money had and received. See, e.g., Hanover Ins. Co. v. Carroll, Civ. A. No. 1:13-cv-01802, 2014 WL 5472520, at *5 (N.D. Ga. Mar. 5, 2014) (explaining that the economic loss rule applies only to tort claims and is not applicable to non-tort claims for money had and received); Hollander v. Zito, Civ. A. No. 11-cv-00499, 2011 WL 5834688, at *6 (D. Colo. Nov. 21, 2011) (declining to dismiss action for money had and received under the economic loss rule); JK Roller Architects, L.L.C. v. Tower Invs., Inc., No. 02778, 2003 WL 1848101, at *1 (Phila. Cty. C.C.P. Mar. 17, 2003) (declining to dismiss unjust enrichment claim under gist of the action doctrine because "[t]his doctrine does not apply to causes of action based upon implied or constructive contracts, but rather only applies to torts"). Therefore, because no precedent exists for dismissing the claim for money had and received in Count VI under the gist of the action doctrine, and it does not appear that the doctrine would otherwise apply to this kind of action, Defendant's Motion to Dismiss this claim will be denied.

### E. Takeda's Remaining Claims Will Not Be Dismissed at This Stage for Failure to State a Claim

Last, Defendant contends that Plaintiff's claims should be dismissed because the allegations alleged in the Complaint are implausible. Having found that the gist of the action doctrine bars Plaintiff's claims for fraud/misrepresentation in Count I, breach of the duty of loyalty in Count III, breach of fiduciary duty in Count IV, and conversion in Count V, the Court need not address the plausibility of these allegations. Therefore, the Court will only address the

plausibility of the breach of contract claim in Count II and the money had and received claim in Count VI.

### 1. Takeda's Breach of Contract Claim Will Not Be Dismissed for Failure to State a Claim

Defendant contends that Takeda's breach of contract claim in Count I should be dismissed because the allegations in the Complaint are implausible and cannot withstand a motion to dismiss. (Doc. No. 16 at 25.) Under Pennsylvania law, to state a claim for breach of contract, Plaintiff must plead: "(1) the existence of a contract, including its essential terms; (2) the defendant's breach of duty imposed by the terms; and (3) actual loss or injury as a direct result of the breach." Angino v. Wells Fargo Bank, N.A., 666 F. App'x 204, 207 (3d Cir. 2016) (citing Ware v. Rodale Press, Inc., 322 F.3d 218, 225 (3d Cir. 2003)). "An enforceable contract exists where the parties reached a mutual agreement, exchanged consideration, and set forth the terms of their bargain with sufficient clarity." Gilmour v. Bohmueller, Civ. A. No. 04-2535, 2005 WL 241181, at *9 (E.D. Pa. Jan. 27, 2005) (citing Biddle v. Johnsonbaugh, 664 A.2d 159, 163 (Pa. Super. Ct. 1995)).

Here, Takeda has plausibly pled a claim for breach of contract. First, Takeda has pled the existence of the License Agreement, including its essential terms, and has attached the Agreement to the Complaint as Exhibit A. (Doc. No. 1, Ex. A.) Second, Takeda alleges that Defendant had an obligation under the License Agreement to supervise the development of the drugs that utilized the liquisolid technology. (Id. ¶ 101.) Takeda further pleads that Mutual, United, and Hygrosol "unanimously selected generic felodipine and propafenone for development" as products covered by the patent. (Id.) Defendant allegedly breached his obligation to supervise the development of these drugs because he developed felodipine and propafenone formulations that were not covered by the patent. (Id. ¶ 102.) Takeda alleges that

instead, the felodipine and propafenone formulations were Mutual's confidential information. (Id. ¶ 103.)  As such, Defendant used this confidential information for his personal benefit by falsely characterizing the formulations as covered by the patent, subjecting them to royalty payments under the License Agreement.  (Id.)

Third, Takeda alleges that it suffered a loss as a direct result of Defendant's actions in an amount "including at least all of the royalties that it paid under the [License Agreement]."  (Id. ¶ 105.)  Accepting all of Takeda's factual allegations as true, as the Court must, Takeda has pled a plausible claim of breach of contract, and Defendant's Motion to Dismiss with respect to this claim will be denied.

### 2. Takeda's Claim for Money Had and Received Will Not Be Dismissed for Failure to State a Claim

Defendant contends that Takeda's money had and received claim in Count VI should be dismissed because it is implausible.  (Doc. No. 16 at 25.)  As previously stated, a claim for money had and received is a quasi-contractual claim.  Under Pennsylvania law, a claim for money had and received,

> entitles a party to relief where money is wrongfully diverted from its proper use and that money subsequently falls into the hands of a third person who has not given valuable consideration for it.  The cause of action fails, however, where the recipient of the money has given consideration in exchange for the funds and is unaware that the money was procured by fraudulent means.

S. Kane & Son Profit Sharing Tr. v. Marine Midland Bank, No. Civ. A. 95-7058, 1996 WL 325894, at *7 (E.D. Pa. June 13, 1996) (quoting Solomon v. Gibson, 614 A.2d 367, 369 (Pa. Super. Ct. 1992)).  As noted, a plaintiff is entitled to recover money paid to a defendant if "(1) the money had been paid by mistake or under compulsion, or (2) the consideration was insufficient."  Frenkel v. Baker, Civ. A. No. 13-5880, 2014 WL 5697449, at *10 (E.D. Pa. Nov. 4, 2014) (quoting Springfield Twp., 889 A.2d at 1186 n.2).

Here, Takeda has alleged that "Mutual paid royalties on sales of generic felodipine and propafenone to [Defendant] . . . based on the erroneous belief that the formulations" used the patented technology as required by the License Agreement. (Doc. No. 1 ¶ 123.) Instead, Takeda asserts that the two drug formulations were confidential information belonging to Mutual, which were free of any royalty obligation under the License Agreement. (Id. ¶ 124.) As a result, Takeda argues that "[i]t would be inequitable, unjust, and unconscionable to allow [Defendant] to retain the royalty payments." (Id. ¶ 125.) Based on these allegations, Takeda has plausibly alleged that money was wrongfully diverted to Defendant where Mutual, Takeda's predecessor, did not receive valuable compensation for it. Accepting the facts alleged in the Complaint as true, Takeda has pled a plausible claim for money had and received in Count VI to withstand a motion to dismiss.

### F. Leave to Amend the Complaint Will Be Granted

Takeda requests leave to amend its Complaint. (Doc. No. 18 at 43.) In support of this request, Takeda asserts that it has not previously amended its Complaint, an amendment would not result in prejudice to Defendant, and amendment would not be futile. (Id.) This Court agrees.

Federal Rule of Civil Procedure 15 provides that "[a] party may amend the party's pleading once as a matter of course any time before a responsive pleading has been served." Fed. R. Civ. P. 15(a). In addition, a court should "freely give" leave to amend pleadings "when justice so requires." Fed. R. Civ. P. 15(a)(2). Indeed, "a court must permit a curative amendment, unless an amendment would be inequitable or futile." Phillips v. Cty. of Allegheny, 515 F.3d 224, 236 (3d Cir. 2008); see Wilmington Fin., Inc. v. Am. One Fin., Inc., Civ. A. No. 06-5559, 2007 WL 2221424, at *3 (E.D. Pa. July 31, 2007) (dismissing plaintiff's fraud claim under the gist of the action doctrine, but granting leave to amend "to meet the particularity

requirements of Rule 9, and establish (if possible) that its tort claims are collateral to the breach of contract claim").

In the instant case, Takeda has not amended its Complaint, and leave to amend may not be futile here. Takeda's claims for fraud/misrepresentation, breach of the duty of loyalty, breach of fiduciary duty, and conversion were dismissed under the gist of the action doctrine because Takeda failed to plead facts sufficient to establish that its tort claims were collateral to its breach of contract claim. Takeda will be given the opportunity to plead facts sufficient to support each of its tort claims and to show that its tort claims are collateral to the breach of contract claim.

## V.   CONCLUSION

For the foregoing reasons, the Motion to Dismiss (Doc. No. 16) will be granted in part and denied in part, and Plaintiff will be granted leave to file an Amended Complaint. An appropriate Order follows.